# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| EDDIE CLARK AND BYRD MINTER | CIVIL ACTION NO.  11-2149 |
| VERSUS | JUDGE ROBERT G. JAMES |
| JAY MARX, ET AL. | MAG.  JUDGE KAREN L. HAYES |

### RULING

This matter arises from the dissatisfaction of Plaintiffs Eddie Clark, a registered voter in the City of Monroe and a City of Monroe Council member, and Byrd Minter, also a registered voter in the City of Monroe, with the failure of the City Council to issue a reapportionment plan for the City's voting districts in time for the regularly scheduled elections for City Council positions to be held in March and April 2012.

Plaintiffs brought suit against Defendants City of Monroe Council members Jay Marx, Gretchen Ezernack, Arthur Gilmore, Jr., and Robert Stevens; and City of Monroe Mayor Jamie Mayo (collectively, "City of Monroe Defendants"); Ouachita Parish Clerk of Court Louise Bond ("Bond"); and Louisiana Secretary of State Tom Schedler ("Schedler") under 42 U.S.C. §§ 1973c, 1983, and 1988, contending that the actions of Defendants have resulted in a violation of Plaintiffs' rights under Section 5 of the Voting Rights Act of 1965 and the one person, one vote principle of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.  Plaintiffs also invoked the supplemental jurisdiction of the Court over state law claims that Defendants have violated their voting rights under Article I, Section 10 of the Louisiana Constitution of 1974, as established by the statutory election laws of the State of Louisiana, La. Rev. Stat. 18:402, and under the provisions of the City of Monroe Charter. Plaintiffs seek declaratory, injunctive, and other relief from the Court.

Pending before the Court is a motion for preliminary injunction [Doc. No. 2] that

Plaintiffs filed in conjunction with their Complaint.  Plaintiffs move the Court for an injunction

compelling Defendants Schedler and Bond to

(1)     conduct qualifying by candidates for a position on the City Council for the
City of Monroe on January 11, 12, and 13, 2012[,] at the time and place,
and under such procedure as shall otherwise be required by law;

(2)     conduct the primary elections for the candidates for a position on the City
Council for the City of Monroe on March 24, 2012, and conduct all
general elections on April 21, 2012, at the time and place, and under such
procedure as shall otherwise be required by law; and

(3)     take such other actions as the Defendant, Tom Schedler in his official
capacity as the Secretary of State, and Defendant, Louise Bond in her
official capacity as the Clerk of Court for Ouachita Parish[,] shall deem
necessary to meet the election procedures of the State of Louisiana and
conduct the election of members to the City Council for the City of
Monroe on the dates specified herein.

[Doc. No. 8, p. 2].

For the following reasons, Plaintiffs' motion for preliminary injunction is DENIED.

## I.      PROCEDURAL HISTORY

On December 14, 2011, Plaintiffs filed their Complaint [Doc. No. 1], initiating this

action against Defendants.  The same day, Plaintiffs filed a Motion for an Expedited Hearing

Schedule and Hearing to Issue Preliminary Injunctions and Remedial Orders, which contained the

pending motion for preliminary injunction [Doc. No. 2].

The Court held a telephone status conference with counsel for all parties on December 19,

2011.  At the Court's request, Robert Berman, an attorney for the United States Department of

Justice ("DOJ"), and Katherine Vincent, Assistant United States Attorney for the Western

District of Louisiana, also participated in the conference.   At the conclusion of the conference,

the Court granted Plaintiffs' Motion for Expedited Hearing Schedule and Hearing to Issue

Preliminary Injunctions [Doc. No. 2] and set a hearing on Plaintiff's motion for preliminary

injunction for January 3, 2012, at 9:00 a.m.  The Court instructed the parties to file a joint

proposed order for the Court's review if they reached agreement prior to the hearing.

On December 29, 2011, Plaintiffs and City of Monroe Defendants filed a Joint Stipulation

of Uncontested Facts [Doc. No. 6] and a proposed Remedial Order [Doc. No. 8].  All parties also

filed a separate Joint Stipulation of Uncontested Facts [Doc. No. 7].  Following these filings,

counsel for Secretary of State Schedler notified the Court and opposing counsel that Schedler did

not consent to entry of the Remedial Order.  As a result of these filings and correspondence, the

Court held another telephone status conference on December 30, 2011, at 11:00 a.m.  After some

discussion, the Court concluded that a hearing on Plaintiffs' motion for a preliminary injunction

was necessary and would proceed on the previously set date and time.  Plaintiffs and any party

opposing the entry of the proposed Remedial Order were required to file briefs in support of their

respective positions no later than January 2, 2012.

On December 30, 2011, Schedler filed Affirmative Defenses and Answer [Doc. No. 10].

As one of his defenses, however, Schedler asserted that the Court lacked personal jurisdiction

over him because Plaintiffs had not yet served him.

Plaintiffs, City of Monroe Defendants, and Schedler timely filed briefs on January 2,

2012.

On January 3, 2012, counsel for all parties were present for a hearing.  Prior to the

hearing, the Court held a conference with counsel.  Following the conference, Plaintiffs and Bond

stipulated on the record that Bond would comply with any order of the Court or any agreement of

the parties which was approved by the Court.  Plaintiffs and Bond further stipulated that Plaintiffs

do not intend to seek attorney's fees and costs against Bond under 42 U.S.C. § 1988.  Based on

these stipulations, Bond and her counsel were permitted to leave the hearing.

The Court then recessed to provide counsel for Plaintiffs and the remaining Defendants an opportunity to reach an amicable resolution of this matter.  Ultimately, the parties could not reach a final agreement.  Although there was discussion of a continuance, given the time constraints, the Court went forward with the hearing.

At the hearing, no witnesses were presented.  Instead, counsel stipulated to certain facts and to the anticipated testimony of witnesses.  The Court left the record open to allow counsel, within the narrow confines of the time constraints, to supplement the record with additional facts or law prior to the Court's ruling.

Counsel also presented oral argument in support of their briefs.

On January 6, 2012, the Court received a letter memorandum from Plaintiffs' counsel, which addressed cases cited by Schedler's counsel in an email.  The Court has reviewed those arguments prior to issuance of this Ruling.

## II.    FACTS

The City of Monroe operates under a home rule charter[1] adopted in August, 1979. Pursuant to the charter, the City of Monroe is governed by an elected mayor and an elected five-member city council, comprised of one representative from each of five single-member districts having substantially equal population.  The mayor and city council members serve concurrent four-year terms.

On February 3, 2011, the United States Census Bureau released the 2010 decennial

---

[1] Article VI, § 5(A) of the Louisiana Constitution grants municipalities the power to set up home rule charters.  A home rule charter shall provide the structure and organization, powers, and functions of the local government, "which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution." LA. CONST. ART. VI, §§ 5(A) & (E).

census data to the State of Louisiana.  The census data indicates, that, at that time, the City of

Monroe had a total population of 48,815 persons.  Based upon total population, to be numerically

perfect, each of the five electoral districts should have a population of 9,763 persons.  None of

the five electoral districts, which were based on the 2000 United States Census Bureau data, were

numerically perfect.  The electoral districts had a total population deviation of 15.85%.

On the City of Monroe Charter requires that "[n]ot later than one (1) year following official

publication of each federal census by the United States Bureau of the Census for the area covered

by the City and at least six (6) months prior to the next election for council members, the council

by ordinance shall alter, change or rearrange council district boundaries so as to provide for

population equality among the districts in compliance with the constitutional requirements of

equal representation.  Council district shall be compact to the extent possible and be composed of

contiguous territory." [Doc. No. 13, Exhibit A, City of Monroe Charter, Section 2-02 C.

(hereinafter "Charter, Section _")].

On August 24, 2011, the City of Monroe hired North Delta Regional Planning and

Development District, Inc. ("North Delta") to prepare a reapportionment plan.

On or about October 23 or 24, 2011, the City Council held discussion on the

reapportionment plan.  On October 31, 2011, the City of Monroe published notice that this item

would be discussed at the City Council's November 8, 2011 meeting.

On November 8, 2011, the reapportionment plan for the City Council electoral districts

prepared by North Delta was introduced and discussed.  A copy of the reapportionment plan was

placed in the office of the City Clerk for public inspection prior to final adoption.

On November 22, 2011, the City Council adopted the previously discussed apportionment

plan without change.  Because the City of Monroe is a covered entity under Section 5 of the

Voting Rights Act of 1964, the City of Monroe was required to submit the reapportionment plan to the DOJ for preclearance.  The City of Monroe submitted the reapportionment plan to DOJ the following day, November 23, 2011.  However, the DOJ did not receive the reapportionment plan until November 28, 2011, after the Thanksgiving holiday.

 The four-year terms for the offices of mayor and city council members expire in 2012.  The regularly scheduled primary election is set for March 24, 2012, and the general election is set to be held, if necessary, on April 21, 2012.  Candidates who are successful in the spring elections will take office on July 1, 2012.

The qualifying period for the March and April 2012 elections was December 7-9, 2011.  Pursuant to La. Rev. Stat. 18:1944, five business days prior to the opening of the qualifying period, or no later than November 30, 2011, the City of Monroe was required to give notice to the Secretary of State that its reapportionment plan had received preclearance from DOJ.  The City had not received preclearance by November 30, 2011, and, thus, did not give the requisite notice.

Plaintiffs both attempted to qualify as candidates for positions on the City Council.  However, having received no notice of preclearance, Defendants Schedler and Bond refused to accept any candidates attempting to qualify for positions on the City Council.  Pursuant to La. Rev. Stat. 42:2,[2] the current City Council members will hold over in their offices until the next regularly scheduled primary election is held on November 6, 2012, and the general election, if necessary, is held on December 1, 2012.   Defendants Schedler and Bond did accept candidates attempting to qualify for the position of mayor for the City of Monroe because this is an at-large

---

[2]"Every public officer in this state except in case of impeachment, suspension, or meeting the term limitations set forth in R.S. 42:3.2, shall continue to discharge the duties of his office until his successor is inducted into office."  LA. REV. STAT. 42:2

position unaffected by the reapportionment plan.  *See* Charter, Section 3-02.

On December 14, 2011, Plaintiffs filed the instant lawsuit.

On December 21, 2011, DOJ issued a preclearance letter to David Creed, Executive Director of North Delta, notifying him that DOJ interposes no objection to the changes proposed in the City of Monroe's 2011 reapportionment plan.  Although the City of Monroe's reapportionment plan has now been precleared, by operation of state law, elections for City Council remain set for November and December 2012.  Therefore, current City Council members will remain in office after July 2, 2012,[3] and until the elections results from November and, possibly, December 2012 are certified.

## III.   LAW AND ANALYSIS

### A.   Jurisdictional and Venue Challenges

Both in brief and at the hearing in this matter, Defendant Schedler raised jurisdictional challenges to Plaintiffs' claims, as well as a challenge to venue.  A federal court must determine whether jurisdiction is proper prior to addressing the merits of a case.  *See Steel v. Citizens for a Better Env't*, 523 U.S. 83, 94, (1998) (requiring a jurisdictional determination as a "threshold matter").  Additionally, the Court finds it proper to address the preliminary matter of venue.

#### 1.   Personal Jurisdiction over Defendant Schedler

In addition to other defenses, Schedler contends that the Court lacks personal jurisdiction over him because Plaintiffs have not served him in compliance with Fed. R. Civ. P. 4(j)(2) and La. Code Civ. P. art. 1265.[4]

---

[3]The City Charter provides that city officials "shall take office at noon on the first Monday in July next following their election."  Charter, Section 8-10.

[4]The remaining Defendants have not filed answers or raised the affirmative defense of lack of personal jurisdiction.

At the hearing, Plaintiffs admitted that they have not personally served Schedler or, as permitted by La. Code of Civ. P. art. 1265, a person over the age of eighteen in his office. Plaintiffs' counsel took issue with the refusal of Schedler's counsel to accept service on his behalf. Plaintiffs' counsel also argued that Schedler may have waived service given his counsel's participation in these proceedings.

In response, Schedler's counsel pointed out that under the commentary to the 1993 amendments to Rule 4(j), Schedler is not permitted to waive service of process, and service may be accomplished only as set forth in Rule 4(j)(2) or under state law, as set forth in La. Code Civ. P. Art. 1265, neither of which provide for service on counsel.

"[A] state official sued in his official capacity is not subject to the mandatory waiver-of-service provision of rule 4(d)." *Moore v. Hosemann*, 591 F.3d 741, 747 (5th Cir. 2009). It is undisputed that, as of the date of the hearing, service had not been made on Schedler, and, thus, the Court did not have personal jurisdiction over him. Further, while Schedler's counsel has made an appearance in this matter on his behalf, Schedler has consistently maintained this defense in his Answer and in his briefs to the Court.

However, Plaintiffs have 120 days to effect service of process under Federal Rule of Civil Procedure 4(m), and, on January 4, 2012, Plaintiffs timely served Schedler. The summons was returned executed and filed on January 5, 2012. [Doc. No. 17]. Therefore, the Court now has personal jurisdiction over Schedler.

### 2.   Constitutional Standing and Subject Matter Jurisdiction

Schedler also raises two related jurisdictional arguments. First, he contends that the Court lacks constitutional jurisdiction over the case because Plaintiffs have not demonstrated an actual injury, but have raised only a "generalized grievance." [Doc. No. 14, p. 13]. Article III, §

2, of the United States Constitution limits the federal judicial power to actual "cases" and controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  To establish constitutional standing, a plaintiff must satisfy three elements: (1) "injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) that it is "likely"  that "the injury will be redressed by a favorable decision."  *Id.* at 560-61 (internal quotation marks and citation omitted).  In *Baker v. Carr*, 369 U.S. 186, 204-08 (1962), the Supreme Court held that "the alleged dilution of an individual voter's power to elect representatives provides that voter with standing." *Lepak v. City of Irving Tex.*, 2011 WL 6217946 at *1 n.1 (5th Cir. Dec. 14, 2011).

Here, all parties agree that the electoral districts for the City of Monroe are malapportioned based on the 2010 census data and that, in the absence of a court order, the current City Council elected from these now malapportioned districts will hold over in office for at least four months beyond July 2, 2012, when newly elected City Council members would normally take office.  Since Plaintiffs are registered voters in the City of Monroe who will be represented by the malapportioned districts, the Court finds that Plaintiffs have demonstrated an injury sufficient to state a case or controversy under Article III, § 2.

Schedler also argues that the Court does not have subject matter jurisdiction over this action because Plaintiffs have not alleged any facts that would establish a claim under any federal cause of action and jurisdictional statute.  Only the Supreme Court derives its jurisdiction directly from the Constitution.  *Kline v. Burke Constr. Co.*, 260 U.S. 226, 234 (1922).  Federal district courts require Congress's statutory authorization to hear a case.  Here, Plaintiffs have alleged a violation of their voting rights under the Equal Protection Clause of the Fourteenth Amendment.

These claims may be properly asserted under 42 U.S.C. § 1983.[5]  Therefore, the Court finds that

it has federal question jurisdiction under 28 U.S.C. § 1331.

      **3.**     **Venue**

      Finally, during oral argument, Schedler's counsel raised the issue of venue, contending

that an action against the Secretary of State should be brought in state or federal court in Baton

Rouge.

      Venue is governed by 28 U.S.C. § 1391.  Under that statute, when a case arises under the

Court's federal question jurisdiction, venue is proper "only in (1) a judicial district where any

defendant resides, if all defendants reside in the same State, (2) a judicial district in which a

substantial part of the events or omissions giving rise to the claim occurred, or a substantial part

of property that is the subject of the action is situated, or (3) a judicial district in which any

defendant may be found, if there is no district in which the action may otherwise be brought."  28

U.S.C. § 1391(b).  All Defendants have been sued in their official capacities, and the general rule

in suits against public officials is that the official's residence for venue purpose is the district

where he performs his official duties.  *See Florida Nursing Home Ass'n v. Page*, 616 F.2d 1355,

1360 (5th Cir. 1980).  Under this general rule, all Defendants except Schedler reside in Monroe

and/or Ouachita Parish, and venue is proper under the first prong.[6]  Moreover, a substantial part

of the events or omissions giving rise to Plaintiffs' claim occurred in this Parish, so venue is also

---

[5]As noted in the presentation of facts, Plaintiffs also assert that they were denied the opportunity to qualify as candidates for City Council for the March and April 2012 elections. Although Plaintiffs do not assert in their brief or argument that they have standing on this basis, the Court takes note of this fact as well.

[6]Although Defendants' personal place of residence was not made part of the record, the Court would note that all City of Monroe officials must reside within the city limits in order to qualify for and to hold office.

proper under the second prong.  Thus, under § 1391(b)(1) and(2), venue is proper in the Monroe

Division of the Western District of Louisiana.

### B.    Preliminary Injunction

In order to obtain a preliminary injunction under Rule 65 of the Federal Rules of Civil

Procedure, the movant must demonstrate the existence of four traditional factors: "(1) a

substantial likelihood that a plaintiff will prevail on the merits, (2) a substantial threat that

plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury

to plaintiff outweighs the threatened harm the injunction may do to the defendant, and (4) that

granting the preliminary injunction will not disserve the public interest."  *Canal Authority of*

*Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (citations omitted); *see also Black Fire*

*Fighters Ass'n of Dallas v. City of Dallas, Tex.*, 905 F.2d 63, 65 (5th Cir. 1990).  "A preliminary

injunction is an extraordinary remedy and should be granted only if the movant has clearly

carried the burden of persuasion with respect to all four factors."  *Allied Mktg. Group, Inc. v.*

*CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).  Thus, "the decision to grant a preliminary

injunction is to be treated as the exception rather than the rule." *Miss. Power & Light Co. v.*

*United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

In this case, the Court finds that Plaintiffs have failed to carry their burden of persuasion

on the first factor:  a substantial likelihood that they will prevail on the merits.

### 1.    Claim under the Voting Rights Act

First, Plaintiffs concede that their claim under the Voting Rights Act of 1965, 42 U.S.C. §

1973c,  is now moot.  Section 5 of the Voting Rights Act requires that any change in a standard,

practice, or procedure with respect to voting by a covered jurisdiction be submitted to the United

States Attorney General for prior approval or "preclearance."[7] 42 U.S.C. § 1973c; 28 C.F.R. § 51.1. (2011). "[S]ection 5 applies to plans produced by political subdivisions reapportioning themselves." *Kirksey v. Board of Supervisors of Hinds Cnty., Miss.*, 528 F.2d 536, 540 (5th Cir. 1976) (citing *Connor v. Johnson*, 402 U.S. 690 (1971) and *Zimmer v. McKeithan*, 467 F.2d 1381, 1383 (5th Cir. 1972), *rev'd on other grounds on rehearing en banc*, 485 F.2d 1297 (1973)).

It is undisputed that the City of Monroe is a covered jurisdiction and was required to obtain preclearance of its reapportionment plan. However, the City Council passed its reapportionment plan on November 22, 2011, presented the plan to DOJ on November 23, 2011, and the DOJ issued a preclearance letter on December 21, 2011. Thus, Plaintiffs' § 1973c claim is moot and cannot provide the basis for the issuance of an injunction. The Court will dismiss this claim with prejudice.

### 2. Equal Protection Claim under 42 U.S.C. § 1983

Plaintiffs also assert, however, that they are entitled to obtain a preliminary injunction under 42 U.S.C. § 1983.[8] Plaintiffs argue that continued representation by City Council members

---

[7] Alternatively, a covered jurisdiction may file a declaratory judgment action in the United States District Court for the District of Columbia. 28 C.F.R. § 51.1; *see also Theriot v. Parish of Jefferson*, 185 F.3d 477, 489 (5th Cir. 1999).

[8] Plaintiffs asserted a third federal claim under 42 U.S.C. § 1988, but that statute provides only that a "prevailing party" on a § 1983 claim may recover attorney's fees and, in the discretion of the court, expert's fees, as part of the costs of the litigation.

Plaintiffs also asserted state law claims, but for the most part do not rely on these claims in support of their motion for preliminary injunction. Plaintiffs do contend that, under the City Charter, their "right to vote" includes the right to elect a mayor and city council members during the same election. [Doc. No. 13, p. 10]. Plaintiffs contend that the Court need only find that "the Monroe City Charter does not provide a mechanism that will protect [their] right to vote, and order that qualifying for Council positions be opened and elections conducted, to vindicate [Plaintiffs'] Equal Protection Claim." *Id.* However, Plaintiffs have asserted an Equal Protection claim only under the one person, one vote principle, and Plaintiffs have failed to connect this claim based on the City Charter with their federal voter dilution claim.

over malapportioned electoral districts past July 2, 2012, will violate the one person, one vote

principle of the Equal Protection Clause of the Fourteenth Amendment.  The Court finds that

Plaintiffs have failed to demonstrate that they have a substantial likelihood of success on this

claim because the City Defendants have complied with their Equal Protection obligation to the

citizens of Monroe by reapportioning the electoral districts and obtaining preclearance on their

reapportionment plan from the DOJ in a reasonable period of time.  The short holdover period for

current City Council members based on operation of the state's general election laws does not

result in a constitutional deprivation necessitating this Court's intervention.  Even if this short

holdover period were sufficient to constitute a violation of Equal Protection, this is the type of

case in which the Supreme Court has guided federal courts to use restraint and decline to grant

the immediate relief requested.

  The Equal Protection Clause requires that representatives to an elected body be drawn

from voting districts of substantially equal population.  *Reynolds v. Sims*, 377 U.S. 533 (1964);

*see also Chen v. City of Houston*, 206 F.3d 502, 522 (5th Cir. 2000) (citing same).   This

guarantee extends to local elections.  *Chen*, 206 F.3d at 522 (citing *Avery v. Midland Cnty.*, 390

U.S. 474 (1968)).  If the maximum variation between districts exceeds a certain threshold,

generally found to be ten percent, the governing body must either reapportion or justify the

variance by invoking legitimate considerations incident to a rational state or local policy.  *See*

*Chen*, 206 F.3d at 522 (citing *Mahan v. Howell*, 410 U.S. 315 (1973) and *Connor v. Finch*, 431

U.S. 407 (1977)).

  In *Reynolds*, the Supreme Court recognized that

> Decennial reapportionment appears to be a rational approach to readjustment of
> legislative representation in order to take into account population shifts and
> growth. Reallocation of legislative seats every 10 years coincides with the

> prescribed practice in 41 of the States . . . although undoubtedly reapportioning no more frequently than every 10 years leads to some imbalance in the population of districts toward the end of the decennial period and also to the development of resistance to change on the part of some incumbent legislators. **In substance, we do not regard the Equal Protection Clause as requiring daily, monthly, annual or biennial reapportionment, so long as a State has a reasonably conceived plan for periodic  readjustment of legislative representation**. **While we do not intend to indicate that decennial reapportionment is a constitutional requisite, compliance with such an approach would clearly meet the minimal requirements for maintaining a reasonably current scheme of legislative representation**. And we do not mean to intimate that more frequent reapportionment would not be constitutionally permissible or practicably desirable. But if reapportionment were accomplished with less frequency, it would assuredly be constitutionally suspect.

377 U.S. at 583–84 (emphasis added) (internal footnote omitted).  If a governing body has a plan for reapportionment every ten years, there is no Supreme Court case directly addressing the question of how long the governing body can delay reapportionment after the decennial census data is received without running afoul of the Fourteenth Amendment.

Nevertheless, this Court's "review must be understood in the context of the courts' traditional reluctance to interfere with the delicate and politically charged area of legislative redistricting." *Chen*, 206 F.3d at 505 (citations omitted).  Even when a state's apportionment scheme has been found to be unconstitutional, the Supreme Court has recognized that "under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court withholding the granting of immediately effective relief." *Reynolds*, 377 U.S. at 585.  In fact,

> a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree.

*Id.*

Here, the City of Monroe Charter provides for decennial reapportionment of electoral districts.  Under 2-02(C), "[n]ot later than one (1) year following official publication of each federal census by the United States Bureau of the Census for the area covered by the City and at least six (6) months prior to the next election for council members, the council by ordinance shall alter, change or rearrange council district boundaries so as to provide for population equality among the districts in compliance with the constitutional requirements of equal representation . . . ."  The City Council passed a reapportionment plan based on the 2010 census data on November 22, 2011, within the one-year period provided for in Section 2-02(C), but not within six months prior to the next election.  The City Council submitted the plan for preclearance the following day, on November 23, 2011.

However, since preclearance had not been obtained by November 30, 2011, by application of La. Rev. Stat. 18:1941(C),[9] Schedler and Bond were prevented from holding the elections for City Council positions in March and April 2012.[10]  Although the plan was

_____

[9]Plaintiffs contend that the State of Louisiana cannot enforce the provisions of La. Rev. Stat. 18:1941(C) against the City of Monroe because it holds a Home Rule Charter and is "constitutionally free from legislative interference under Louisiana Constitution, Article VI, Section 4 through Section 8." [Doc. No. 13, p. 12 (emphasis deleted)].  As pointed out by City of Monroe Defendants, however, the City Charter specifically provides that "[e]lections shall be held in accordance with the elections laws of the state."  Charter, Section 2-01(f).  The Court need not express an opinion on this matter of state law concern.  Even if Plaintiffs' argument is correct, the City Charter incorporates the provisions of the State's elections laws.

[10]La. Rev. Stat. 18:1941(C) provides that "In order for an office which is included in a reapportionment or redistricting plan to be included on the ballot for an election, a notice that such plan has been precleared pursuant to the Voting Rights Act of 1965 shall be received by the secretary of state not later than 5:00 p.m. of the fifth business day prior to the scheduled opening of the qualifying period for the election. If the notice of preclearance is not timely received by the secretary of state, the election shall be postponed and shall be scheduled at the next available election date and such election shall not be considered a special election. The secretary of state shall not include on the ballot for the election any office for which notice of preclearance of the

precleared by DOJ on December 21, 2011, state law does not allow for the reopening of the qualifying period.  Instead, pursuant to La. Rev. Stat. 42:2, the City Council members will remain in office until after the next regular primary election, November 6, 2012, and, if needed, the general election of December 1, 2012.  Plaintiffs argue that because the City Defendants failed to timely approve a reapportionment plan, current City Council members will remain in office approximately four to five months longer and this continued representation by City Council members over malapportioned electoral districts constitutes an Equal Protection violation. Therefore, Plaintiffs move the Court to order that elections go forward in March and April 2012, in contravention of the requirements of the State's general elections laws.

The Court disagrees.  Plaintiffs do not contest the reapportionment plan adopted by the City Council and, in fact, admit that it meets the requirements of the one person, one vote principle of the Equal Protection Clause of the Fourteenth Amendment.  Plaintiffs admit that the City Defendants sought and obtained preclearance from the DOJ.  Plaintiffs admit that Schedler and Bond "properly declined to allow any candidate for City Council for the City of Monroe to qualify during the December 7, 2011, through December 9, 2011, qualifying period because the Secretary of State did not timely receive the notice of preclearance of the City of Monroe's redistricting plan by 5:00 p.m. of the fifth business day prior to the scheduled opening of the qualifying period for the election of the City Council of the City of Monroe." [Doc. No. 7, ¶ 9]. Plaintiffs do not contest the constitutionality of La. Rev. Stat. 18:1941 on its face or as applied in this case.  Plaintiffs' only claim is that the City Defendants' two-month delay in approving a reapportionment plan has caused them to suffer continued governance by the current City Council for an additional 4-5 months.

_____

reapportionment or redistricting plan is not timely received."

The Supreme Court's interpretation of the one person, one vote principle of the Equal Protection Clause requires only that a municipality have a reasonably conceived plan for periodic reapportionment, not that the plan be executed perfectly.  As recognized by a sister court,

> [t]he holdup in implementing the 2010 census data into the redistricting scheme for this year's city council election is a phenomenon that occurs only once every twenty years. That is, in most election years, [the City ordinance]  provides sufficient time for reapportionment prior to the general election that follows the publication of federal decennial census data . . . Given the four-year election terms for city council members, only one out of every five election cycles falls in the same year the federal decennial census data is published; thus, this overlap will not recur until 2031.

*Graves v. City of Montgomery*, --F. Supp.2d--, 2011 WL 3503133, at *13 (M.D. Ala. Aug. 10, 2011).  In both *Graves* and *French v. Boner*, 786 F. Supp. 1328 (M.D. Tenn. 1992), district courts were asked to grant injunctive and other relief  in cases where the municipal government intended to proceed with elections based on malapportioned districts.  In each case, the municipalities had "reasonably conceived plans" to reapportion and were proceeding with reapportionment under those plans.  Both courts refused to enjoin the elections under the one person, one vote principle of the Equal Protection Clause.  *See also French v. Boner*,  940 F.2d 659 (table), 1991 WL 151016, at *1 (6th Cir. 1991) (affirming the decision of the district court refusing to enjoin the August 1, 1991 elections under *Reynolds* because "federal courts should not intervene until a legislature has failed to reapportion constitutionally after it has had adequate opportunity to do so"; given the "lateness of the census data, . . .the time needed under the city charter and state election laws for the local government to turn the data into election districts and then conduct an election, the Metropolitan government did not have an adequate opportunity to reapportion for the August 1, 1991 elections."); *cf.  Farnum v. Burns*, 548 F. Supp. 769 (D. R. I. 1982) (district court enjoined elections under old census data "until such time as a

constitutionally permissible apportionment plan is devised," thereby leaving the incumbent senators in office to complete the reapportionment work).

While the City Council did not meet the short six-months-before-the-next-election deadline set forth in the City Charter, the City Council's violation of its own Charter provision is not of constitutional concern.  The Court finds that the City of Monroe has a reasonably conceived plan, under which the City Council has completed the work of creating and obtaining preclearance for a reapportionment plan.  Now that the reapportionment plan has been precleared, Defendants Schedler and Bond will fulfill their roles and open qualifying for the City Council positions for the November election, and the elections will proceed at that time.  In the meantime, by application of La. Rev. Stat. 42:2, the same City Council members who have served Plaintiffs and other citizens of Monroe since the 2010 census data was released in February 2011 will continue to serve.  Under these facts, the Court finds that Plaintiffs have failed to demonstrate that they are substantially likely to succeed on their § 1983 claim.[11]

Therefore, Plaintiffs' motion for preliminary injunction is DENIED.

---

[11]The Court limits its analysis to the first factor of the preliminary injunction test, but does not believe Plaintiffs could demonstrate a showing on the second and fourth factors either.  As to the second factor, the limited time period under which Plaintiffs will continue to be represented by City Council members simply does not work an irreparable injury.  Plaintiffs will be able to exercise their right to vote for City Council members serving over properly apportioned electoral districts within a few months.  As to the fourth factor, an injunction in this case would appear to disserve the public interest.  Counsel for Schedler and Bond have both acknowledged that their respective offices could complete the necessary procedures for the elections to be held in March and April 2012 if the Court issued an order no later than mid-January.  However, the mere fact that the officials could complete their tasks does not allow the Court to ignore the general election laws of the State of Louisiana without a federal Constitutional or statutory basis for doing so.  Otherwise, disgruntled citizens would frequently come to federal courts demanding that the Secretary of State be ordered to reopen qualifying periods, waive deadlines, or act contrary to any of the State's election laws.  Such judicial activism would not serve the public interest in this case or any other.

**IV.     CONCLUSION**

For the reasons set forth above, Plaintiffs' claim under 42 U.S.C. § 1973c is DISMISSED

WITH PREJUDICE as MOOT.  Plaintiffs' motion for preliminary injunction [Doc. No. 2] is

DENIED.

MONROE, LOUISIANA, this 9th day of January, 2012.


ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE